UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO.05-30059-KPN

|  |  |
|---|---|
| MICHAEL MORIN,<br><br>       Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF<br>MASSACHUSETTS and,<br>JOHN DOE, Individually and in his<br>Official Capacity,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

The Attorney General, on behalf of the defendants, Commonwealth of Massachusetts (the

"Commonwealth") and John Doe, submits this memorandum in support of their motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

### INTRODUCTION AND SUMMARY OF ARGUMENT

The plaintiff, Michael Morin, alleges he is disabled with a "form of spastic quadra

paresis, . . . a seizure disorder and severe cognitive and mental impairments." Second Amended

Complaint, ¶ 9. His disabilities are the result of a collision with a cement truck on June 15, 1998

while he was riding his bicycle. Id. at ¶¶ 8-9. He "requires the use of a wheelchair or a

motorized scooter to move about." Id. at ¶ 5. To recover compensation for his injuries, he

brought a personal injury action in November 2000 in Berkshire Superior Court, Civil Action

1

No. 00-0338 ("Underlying Action"). Id. at ¶ 10. The jury trial in the Underlying Action resulted in a defense verdict. See id. at ¶ 23.

Morin now brings this related action, claiming that the Commonwealth and Doe discriminated against him in the Underlying Action on the basis of his alleged disability. In particular, he claims that the Commonwealth and Doe failed reasonably to accommodate him when the courthouse elevator malfunctioned. See id. at ¶¶ 12-23. As a result, he "was not afforded the opportunity to fully attend his own jury trial" and his "testimony at the trial" was negatively affected. See id. at ¶¶ 17, 22, 23.

Morin has alleged a host of claims, seeking equitable relief and damages. Morin's claims should be dismissed as follows:

I.      Count IV, which alleges equal protection and due process violations against Doe on the basis of Morin's disability, should be dismissed because such claims are subsumed by Morin's Americans with Disability Act ("ADA") claim, Count I, and his Rehabilitation Act claim, Count II.

II.     Counts I (ADA), II (Rehabilitation Act), and III (ADA) should be dismissed to the extent that they claim damages because nowhere in the Second Amended Complaint has Morin alleged intentional discrimination or economic damages (even when all reasonable inferences are drawn in Morin's favor). And, Count III, which alleges a violation of the ADA's self evaluation requirement, cannot provide a basis for damages.

III.    Count IV, which alleges a violation of equal protection against Doe, should be dismissed in its entirety because nowhere in the Second Amended Complaint has

2

Morin alleged intentional discrimination (even when all reasonable inferences are drawn in Morin's favor).

IV.    The procedural due process claim in Count IV should be dismissed because it constitutes a collateral attack on the Underlying Action, which, according to the Rooker-Feldman doctrine, precludes this Court from acquiring subject matter jurisdiction over it.[1]

V.    Count V, which alleges a violation of G.L. c. 93 § 103 and Article CXIV of the Massachusetts Constitution, should be dismissed because the Commonwealth is not a person and it has not waived its sovereign immunity nor its Eleventh Amendment Immunity.

## ARGUMENT

## I.    COUNT IV SHOULD BE DISMISSED BECAUSE IT IS SUBSUMED BY THE ADA AND REHABILITATION ACT CLAIMS

Count IV is brought pursuant to 42 U.S.C. § 1983, alleging John Doe violated Morin's due process and equal protection rights under the United States Constitution. These claims should be dismissed because they are subsumed by the ADA and Rehabilitation Act claims.

In Meara v. Bennett, 27 F. Supp.2d 288, 290-91 (D. Mass. 1998), this Court dismissed a § 1983 due process claim because the plaintiff had also alleged claims under the ADA. The plaintiff had alleged he was denied due process on the basis of his disability, claiming that he

---

[1]Because this argument is brought pursuant to Fed. R. Civ. P. 12(b)(1), this Court may consider information that falls outside of the four corners of the Second Amended Complaint, such as the following exhibits that are submitted with this memorandum: Exhibit 1, Affidavit of Daniel A. Ford, Exhibit 2, Affidavit of Deborah S. Capeless, Exhibit 3, Affidavit of Deborah Schilling, and Exhibit 4, Affidavit of Roger Albrecht. See Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002)

"had a substantive liberty interest 'in employment unfettered by handicap discrimination.'" <u>See</u> <u>id.</u> The Court held that the § 1983 claim was substantively the same as the ADA claim—"job discrimination based upon handicap, including failure to make a reasonable accommodation of a disabled individual." <u>Id.</u> This Court dismissed the § 1983 claim, stating that the ADA provided a "comprehensive enforcement mechanism that precludes a § 1983 action." <u>Id.</u> at 292.

Here, Morin has also brought a § 1983 claim that is duplicative of the ADA claim. Like the plaintiff in <u>Meara,</u> Morin's § 1983 claim alleges discrimination based upon Morin's handicap, including the failure to accommodate his disability. In particular, Morin alleges in his due process and equal protection claims that "[d]isabled persons are a discreet and insular minority" and Doe denied him "accessible public and governmental facilities based solely upon [his] physical disabilities . . . ," resulting in a denial of due process and equal protection. Second Amended Complaint, ¶¶ 45-6. The accessibility requirements alleged in Morin's complaint are based upon the ADA. Thus, <u>Meara</u> dictates that the § 1983 claims should be dismissed.

<u>Meara</u> is not distinguishable because it was based upon Title I of the ADA, as opposed to Title II, which is at issue here. Indeed, the authority relied upon by this Court in <u>Meara</u> is based upon Titles I, II, and III. <u>See</u> e.g. <u>Pona v. Cecil Whittaker's, Inc.</u>, 155 F.3d 1034, 1038 (8th Cir. 1998)(Title III); <u>Davis v. Francis Howell School Dist.</u>, 104 F.3d 204, 206 (8th Cir. 1997)(Title II); <u>Holdbrook v. City of Alpharetta</u>, 112 F.3d 1522, 1531 (11th Cir. 1997)(Title II).[2]

---

[2]To the extent that Morin is attacking the process he received throughout the trial proceedings, such claim should have been brought as an appeal in the underlying lawsuit and not here as a collateral attack. <u>See</u> e.g. <u>Badillo-Santiago v. Naveira-Merly</u>, 378 F.3d 1, 3-4 (1st Cir. 2004)(hearing impaired plaintiff who requested and received accommodations at the trial subsequently appealed claiming the accommodations at trial did not comply with the ADA). Thus, pursuant to the <u>Rooker-Feldman</u> doctrine, this Court does not have subject matter jurisdiction over such an attack, as discussed below in section IV. After eliminating that aspect

4

For all of the above reasons, Count IV should be dismissed.

## II.   COUNTS I, II, AND III SHOULD BE DISMISSED TO THE EXTENT THAT THEY CLAIM DAMAGES

In Counts I, II, and III, Morin seeks both equitable relief and damages for the alleged

violations of the ADA and Rehabilitation Act. See Second Amended Complaint, ¶¶ 31, 32, 37,

38, 43. All three counts must be dismissed to the extent that they seek damages because Morin

has not alleged that (1) the Commonwealth intentionally discriminated against him on the basis

of his disability and (2) he suffered economic damages. Further, the claim in Count III, that the

Commonwealth violated the ADA self evaluation requirement, cannot form the basis of a

damages claim under any circumstances.

To survive a motion to dismiss, a claim for damages under the ADA or the Rehabilitation

Act must sufficiently allege intentional discrimination *and* economic loss. Nieves Marquez v.

Puerto Rico, 353 F.3d 108, 126-27 (1st Cir. 2003). The analysis in Nieves demonstrates that

Morin has not satisfied this pleading requirement.

In Nieves, the defendant "stopped providing [an interpreter for a hearing impaired

student] even though [the defendant] conceded his continued need for one." See id. at 112. The

complaint alleged that the defendants "claimed 'they [were] exempt from complying with federal

law that makes discrimination based [on] disability unlawful.' It also alleg[ed] that the

defendants' 'conduct was irrational, arbitrary, and unreasonable and is but a pretext' for

discrimination, and that the 'defendant[s] ha[ve] engaged for years in a pattern and practice of

discriminating against some children with disabilities.'" Id. at 126 n. 21. The court held that

---

of Morin's alleged Due Process claim, he is left with allegations regarding physical access
barriers which are sufficiently encompassed by the ADA, and not due process.

these allegations were sufficient to allege intentional discrimination; it stated that the complaint, "with all reasonable inferences drawn in its favor, alleges intentional discrimination." Id. That is not the case here.

Here, there are no allegations of intentional discrimination, even if all reasonable inferences are drawn in Morin's favor. Instead, the allegations demonstrate that the alleged discrimination arose out of the untimely malfunctioning of the elevator, not the Commonwealth's intentional acts. Morin alleges: "Without the elevator, the courtroom . . . could only be accessed by climbing over three flights of stairs. As such, [he] had no reasonable means of attending his own trial." Second Amended Complaint, ¶ 13. He claims that the defendants failed to respond to the malfunctioning elevator by offering alternative accommodations, amounting at most to negligence. See id. at ¶¶ 14-17. Morin alleges no other specific acts of discrimination that affected him. Given the complete absence of any allegations remotely alleging intentional discrimination, this Court should dismiss Counts I, II, and III to the extent that they claim damages.

In addition, Morin has failed to allege another element that is necessary to recover damages under the ADA or Rehabilitation Act—that he suffered economic damages. He alleges only that he suffered "physical, psychological, and emotional discomfort, pain and suffering . . . [He] was damaged, embarrassed, [and] humiliated . . ." Second Amended Complaint, ¶ 24. The First Circuit has held that these types of damages are insufficient to support a claim for discrimination under the ADA or Rehabilitation Act. Nieves Marquez, 353 F.3d at 126-27; Schultz v. Young Men's Christian Association of the United States, 139 F.3d 286, 290-91 (1st Cir. 1998). The First Circuit left open the possibility that emotional distress damages may be

6

sufficient in a case where there were allegations of "malice or hostility," or "animus toward the disabled" in order to "punish patent misbehavior or the deliberate infliction of humiliation." Schultz, 139 F.3d at 291. Here, however, there are no such allegations in the Second Amended Complaint. The damages claim is therefore insufficient.

The damages claim in Count III should be dismissed for an additional reason. Count III is based upon a federal regulation, 28 C.F.R. § 35.105, which pertains to self-evaluation for compliance with the ADA. Damages are not available for a violation of this regulation. See Matthews v. Jefferson, 29 F. Supp.2d 525, 540 (W.D. Ark. 1998).

For all of the above reasons, Counts I, II, and III should be dismissed to the extent that they claim damages.

## III. THE EQUAL PROTECTION CLAIM IN COUNT IV SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT NO INTENTIONAL DISCRIMINATION HAS BEEN ALLEGED

As discussed above in section II, Morin has not alleged any intentional discrimination. That is particularly true with respect to defendant named in Count VI, Doe. As a consequence, the equal protection claim in Count IV should be dismissed in its entirety for this additional reason. Garcia Figueroa v. Puerto Rico, 204 F. Supp.2d 281, 286 (D. P.R. 2002)("One who asserts that governmental action violates the Equal Protection Clause must show that she is 'the victim of intentional discrimination.' Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).").

## IV. THE PROCEDURAL DUE PROCESS CLAIM IN COUNT IV SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER IT

The procedural due process claim in Count IV should be dismissed because it is

7

essentially and substantially a collateral attack on the Underlying Action and it is inextricably intertwined with that action. As a consequence, the Rooker-Feldman doctrine provides that this Court lacks subject matter jurisdiction over the claim. It should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

"The Rooker-Feldman doctrine provides that the district courts lack jurisdiction over any action that is effectively or substantially an appeal from a state court's judgment." Badillo-Santiago, 378 F.3d at 6; accord Federacion De Maestros De Puerto Rico v. Junta De Relaciones Del Trabajo De Puerto Rico, 410 F.3d 17, 20 (1st Cir. 2005)("federal district courts lack jurisdiction over 'federal complaints . . . [that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments.'")(quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., __ U.S. __, 125 S.Ct. 1517, 1521, 161 L.Ed.2d 454 (2005)). This doctrine applies regardless of whether the "plaintiff implicitly or explicitly" challenges the state court judgment. Federacion De Maestros De Puerto Rico, 410 F.3d at 20. And, it applies when the state court proceedings have "ended," such as here when the plaintiff allows the time for appeal to expire. Id. at 24, 27-28 (holding that the Supreme Court's decision in Exxon Mobil abrogated prior First Circuit decisions providing that the doctrine only applies when a case is appealable under 28 U.S.C. § 1257 and has preclusive effect); See Exhibit 2, Affidavit of Deborah Capeless, ¶ 3 (noting that Morin did not appeal the underlying action).

Further, the Rooker-Feldman doctrine bars a collateral attack on a state court judgment even where the plaintiff attempts to disguise the collateral attack as a § 1983 action and alleges a violation of constitutional rights, such as due process. Hill v. Town of Conway, 193 F.3d 33, 41 (1st Cir. 1999)("courts do not have jurisdiction pursuant to § 1983 to review the judgments and

8

decisions of state courts")(citation omitted); <u>Shepherdson v. Nigro</u>, 5 F.Supp.2d 305, 308 (E.D. Pa. 1998)(due process claim based on the procedures provided at trial was barred); <u>Postma v. First Federal Savings & Loan of Sioux City</u>, 74 F.3d 160, 162 (8th Cir. 1996)(same); <u>Ritter v. Ross</u>, 992 F.2d 750, 754-55 (7th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1046 (1994) (same).

"If the constitutional claims presented to the United States district court are 'inextricably intertwined with the merits of a judgment rendered in state court, 'then the district court is in essence being called upon to review the state-court decision. This the district court may not do." <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 483-84 n.16 (1983).

Morin's due process claim is essentially and substantially a collateral attack on the process provided in the Underlying Action and it inextricably intertwined with that action. Indeed, all of the specific allegations of discrimination pertain to Morin's trial. <u>See</u> Second Amended Complaint, ¶¶ 10-23. For example, Morin alleges: "Without the elevator, the courtroom . . . could only be accessed by climbing over three flights of stairs. As such, [he] had no reasonable means of attending his own trial." Second Amended Complaint, ¶ 13. He claims that the defendants failed to respond to the malfunctioning elevator by offering alternative accommodations. <u>See</u> <u>id.</u> at ¶¶ 14-17. He concludes that "[a]s a result, [he] was not afforded the opportunity to fully attend his own jury trial . . ." <u>See</u> <u>id.</u> at ¶ 17.

Morin also alleges that he had difficulty accessing the courtroom on the day he testified and that that difficulty impacted the trial. He alleges that "[i]f [he] did not get up the stairs that day, he would not have been able to testify at his own trial." <u>See</u> <u>id.</u> at ¶ 21. He asserts that "being carried up and down the stairs proved traumatic for [him]. The experience affected his testimony at the trial, and as a result of the trauma of banging up the steps, [he] subsequently

9

become [sic] ill and suffered terrible seizures." See id. at ¶ 22. Morin's specific allegations of

discrimination conclude with the following: "On or about October 16, 2002, Michael Morin's

jury trial, most of which he was not able to attend due to the Defendant's violation of the law,

culminated in a defense verdict." See id. at ¶ 23.

That this action is essentially and substantially a collateral attack on the Underlying

Action is further bolstered by the stark absence of a single factual allegation that Morin was

discriminated against in other ways. Although Morin mentions in passing that he seeks equitable

relief regarding "sanitary facilities, doorways, public telephones, courtrooms, or other areas or

places," see Second Amended Complaint, ¶ 31, he does not allege that he was denied access to

any of these features of the courthouse. He also does not allege whether or how any of these

features of the courthouse are deficient. Nor did Morin raise any problems with those features of

the courthouse at the time of his trial. See Exhibit 3, Affidavit of Deborah Schilling, ¶ 7

(summarizing accessibility regarding these features). Perhaps that is because all such facilities

are accessible.[3] See id. (summarizing accessibility of these parts of the courthouse).

Given that all specific allegations of discrimination relate to Morin's trial, it must be

concluded that the primary thrust of his claims, particularly the due process claim, amounts to a

collateral attack on the proceedings and the result in the underlying case. Ironically, Morin raised

---

[3]Indeed, the Administrative Office of the Trial Court has done much to date to help bring the Commonwealth's numerous old courthouses into compliance with the ADA and to provide ADA training to court personnel. See Exhibit 4, Affidavit of Roger Albrecht. Moreover, this Fall, the Commonwealth's Division of Capital Asset Management ("DCAM") will commence a long-planned evaluation of all state courthouses throughout the Commonwealth to determine the extent to which they comply with the precise requirements of the ADA. Berkshire Superior Court will be one of the first courts that will be evaluated. The Administrative Office of the Trial Court and DCAM will then create and implement a plan to address ADA compliance issues throughout the Commonwealth's courthouses. See id.

no such objections in the underlying case.[4]  See Exhibit 1, Affidavit of Daniel A. Ford; Exhibit 2,

Affidavit of Deborah S. Capeless; Exhibit 3, Affidavit of Deborah Schilling.  In fact, after

receiving prior notice of the elevator's disrepair, Morin's attorney stated that he wished to

proceed with the trial as scheduled and that he and Morin's family would make arrangements to

transport Morin to and from the courtroom.[5]  See Exhibit 1, Affidavit of Daniel A. Ford, ¶¶ 4-6;

Exhibit 2, Affidavit of Deborah S. Capeless, ¶¶ 4-5; Exhibit 3, Affidavit of Deborah Schilling, ¶¶

3-4.

 Morin's attorney did not request any sort of alternative accommodation.  See id.  Indeed,

the only access issue that was ever raised related to Morin's parents having to transport Morin up

the stairs, but Judge Ford and the court clerks did not learn about this until after the fact.  See

Exhibit 1, Affidavit of Daniel A. Ford, ¶¶ 7-9; Exhibit 2, Affidavit of Deborah S. Capeless, ¶¶ 6-

8; Exhibit 3, Affidavit of Deborah Schilling, ¶¶ 5-6.  Morin's attorneys did not make any requests

for accommodation nor file any motions associated with that incident.  Moreover, Judge Ford

was not informed that Morin was traumatized by the incident.  To the contrary, Morin "testified

quite well and seemed to make a favorable impression on the jury."  See Exhibit 1, Affidavit of

Daniel A. Ford, ¶ 8.  Aside from Judge Ford and the court clerks learning about this incident after

the fact, they were never informed of any issues or problems relating to Mr. Morin's access to the

---

[4] See e.g. Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 3-4 (1st Cir. 2004)(hearing impaired plaintiff who requested and received accommodations at the trial subsequently appealed, claiming the accommodations at trial did not comply with the ADA).

[5] "The elevator is generally in disrepair about one to two times per year, and it is usually repaired within one to two weeks.  On this particular occasion, a replacement part had to be manufactured, so the elevator was expected to be out of service for approximately one month." Exhibit 2, Affidavit of Deborah S. Capeless, ¶ 4.

courthouse or the courtroom.  See Exhibit 1, Affidavit of Daniel A. Ford, ¶¶ 7-9; Exhibit 2,

Affidavit of Deborah S. Capeless, ¶¶ 6-8; Exhibit 3, Affidavit of Deborah Schilling, ¶¶ 5-6.  If

Judge Ford had known about the subject incident before it occurred or that Mr. Morin was

traumatized by the experience, he "would have asked counsel to propose solutions to resolve the

situation."    See Exhibit 1, Affidavit of Daniel A. Ford, ¶ 8.

     Now, after Mr. Morin and his attorneys in the Underlying Action indicated by their

conduct and their silence that the proceedings were satisfactory, Mr. Morin and his new attorneys

are asserting the unconstitutionality of those proceedings and a denial of Morin's due process

rights.  Given the almost exclusive focus of Morin's allegations on the process provided at his

trial, his success in this action depends almost entirely on showing that the process he received in

his trial was deficient and denied him due process.  Given this and all of the above, this action is

inextricably intertwined with the Underlying Action and substantially and essentially a collateral

attack on it.  Indeed, "[w]here federal relief can only be predicated upon a conviction that the

state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything

other than a prohibited appeal of the state-court judgment."  Postma, 74 F.3d at 162.  The due

process claim is thus barred by the Rooker-Feldman doctrine.  See Badillo-Santiago, 378 F.3d at

6-7 (raising *sua sponte* the Rooker-Feldman doctrine and remanding for consideration to the

district court when a hearing impaired plaintiff claimed he was denied due process when the trial

court allegedly failed to accommodate him).

     Morin's due process claim is not only factually premised on his trial, it is also rooted in

the trial as a matter of constitutional necessity.  "There is . . . no abstract federal constitutional

right to due process.  Fair process is a means to an end.  'Process is not an end in itself.'"

12

Shepherdson, 5 F.Supp.2d at 308-09.[6] The requirements of procedural due process apply only to

the deprivation of a "property interest" or liberty interest protected by the Fourteenth

Amendment. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). State law is the source of

"property interests" for procedural due process purposes, see, e.g., Figueroa-Serrano v. Ramos-

Alverio, 221 F.3d 1, 5-6 (1st Cir. 2000); accord Coyne v. City of Somerville, 972 F.2d 440, 443

(1st Cir. 1992)(contours of right are defined by state law).

       Here, Morin rests his due process claim on the faulty assumption that there may be an

independent constitutional claim for the alleged denial of "process" to which he claims he was

entitled. As discussed above, however, no such independent claim may lie. "An independent

claim for denial of procedural due process arises only when the state fails to provide an adequate

process to remedy legal errors or procedural irregularities. . . . [T]he normal process provided is

an appeal and the usual remedy is a new hearing before an impartial decisionmaker."

Shepherdson, 5 F.Supp.2d at 309. Consequently, Morin's attack on the alleged procedural

irregularities surrounding his trial should have been lodged, if at all, on appeal in the underlying

action, which Morin did not do. The availability of that appellate mechanism provided Morin

with all the process that he was due. He is thus barred by the Rooker-Feldman doctrine from

raising his due process claim in this Court.

## V.    COUNT V SHOULD BE DISMISSED BECAUSE THE COMMONWEALTH IS NOT A PERSON AND IT HAS NOT WAIVED ITS SOVEREIGN IMMUNITY OR ELEVENTH AMENDMENT IMMUNITY

       Morin alleges in Count V that the Commonwealth violated G.L. c. 93 § 103. That statute

---

       [6]See also Oaks v. District Court of the State of Rhode Island, 631 F.Supp. 538, 543 (D.
R.I. 1986)(Selya, J.)(there is no support for the position that "the right to a jury trial in civil cases
is safeguarded by federal due process precepts").

guarantees equal rights for all persons, regardless of handicap or age and it is the procedural

vehicle for bringing a claim under Article CXIV of the Massachusetts Constitution ("Article

CXIV"). See Layne v. Superintendant, Massachusetts Correctional Institution, 406 Mass. 156,

546 N.E.2d 166 (1989)(generally if "violation of art. 114 rights can be redressed within the ambit

of an existing statute . . . there is a well-worn procedural path to relief for such a violation"). The

statute provides the following:

> (a) Any person within the commonwealth, regardless of handicap or age as
> defined in chapter one hundred and fifty-one B, shall, with reasonable
> accommodation, have the same rights as other persons to make and enforce
> contracts, inherit, purchase, lease, sell, hold and convey real and personal
> property, sue, be parties, give evidence, and to the full and equal benefit of all
> laws and proceedings for the security of persons and property, including, but not
> limited to, the rights secured under Article CXIV of the Amendments to the
> Constitution.

G.L. c. 93 § 103(a).

The statute provides that any person whose rights under G.L. c. 93, § 103(a) have been

violated may bring a civil action for injunctive and equitable relief, including compensatory

damages; but such a civil action may only be brought against a "person," a term that ordinarily

does not subject governmental entities to liability (or waive the principle of sovereign immunity),

absent a specific provision to the contrary.[7] See e.g., Will v. Michigan Dept. of State Police, 491

U.S. 58, 64-65 (1989)(it is well-established that 42 U.S.C. § 1983 actions for alleged violations

---

[7]The statute provides, in G.L. c. 93, § 103(b), that any person whose rights under
subsection (a) have been violated, may bring a civil action for injunctive and other appropriate
equitable relief, including compensatory damages. Subsection (b) goes on to specify that such a
civil action shall be instituted either in the superior court for the county in which the challenged
conduct occurred or in the superior court for the county "*in which the person whose conduct
complained of* resides or has his principal place of business," G.L. c. 93, § 103(b)(emphasis
added), thus making clear that the statute applies only to conduct by "persons."

of civil rights may only be brought against a "person," and the Commonwealth is not a person);

Commonwealth v. ELM Medical Laboratories, Inc., 33 Mass. App. Ct. 71, 76-77 & n.9 (1992)

(term "person" in Civil Rights Act, G.L. c. 12, §§ 11H and 11I, does not include Commonwealth

or its departments; the term is not ordinarily construed to include the Commonwealth and "there

is no reason to believe that the Legislature intended, by the enactment of G.L. c. 12, §§ 11H and

11I, to waive sovereign immunity"); Perez v. Boston Housing Authority, 368 Mass. 333, 339

(recognizing as "a widely accepted rule of statutory construction that general words in a statute

such as 'persons' will not ordinarily be construed to include the State or political subdivisions

thereof") (internal citation omitted), appeal dismissed, 423 U.S. 1009 (1975); Sarvis v. Boston

Safe Deposit & Trust Co., 47 Mass. App. Ct. 86, 95 n.10 (same), review denied, 430 Mass. 1106

(1999).

Thus, a Superior Court Judge who addressed the issue concluded that G.L. c. 93, § 103,

does not apply to the Commonwealth, as it is not a "person" or entity covered by the statute.

Buckley v. Department of Mental Health, 1 Mass. L. Rptr. 577 (1994 WL 879637, * 2) (Super.

Ct. 1994) (holding that the term "person" in G.L. c. 93, § 103, does not include the State, and on

that basis granting department's motion for judgment on the pleadings on plaintiff's claim of

handicap discrimination under G.L. c. 93, § 103) (Fremont-Smith, J.).[8]

Count V is also barred by principles of sovereign immunity and Eleventh Amendment

immunity—the former bars the statutory claim and the latter bars both claims (the statutory and

---

[8]On reconsideration, the Court in Buckley issued a second decision, 2 Mass. L. Rptr. 40, 1994 WL 879692, which vacated a portion of the original decision (relating to a different statutory claim) but did not alter the holding, cited in the text above, that the Commonwealth is not a "person" under G.L. c. 93, § 103.

constitutional claim). The Supreme Court has stated that the Eleventh Amendment bars federal courts from interpreting and enforcing state law against the states. Indeed, a federal suit against a state based upon state law contravenes the Eleventh Amendment. Pennhurst State Sch & Hosp. v. Halderman, 465 U.S. 89, 117 (1984). This constitutional bar applies to pendent claims. Id. at 120-21; Torres v. Puerto Rico Tourism Co., 175 F.3d 1, 6 (1st Cir. 1999)(holding that the ADA's explicit abrogation provision does not cover pendent state claims). "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Pennhurst, 465 U.S. at 121. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." Id. at 106. This remains true even if the plaintiff is seeking only injunctive relief. Id. at 107.

Thus "when the relief requested against state officials, whether retroactive or prospective, is based upon violations of state law, federal courts lack jurisdiction to grant relief altogether." Rye Psychiatric Hosp. Ctr., Inc. v. Surless, 777 F. Supp. 1142, 1147 (S.D.N.Y. 1991). It simply "is not the proper purview of a federal court to supervise state officials' compliance with state law."[9] O'Brien v. Massachusetts Bay Transp. Auth., 162 F.3d 40, 44 (1st Cir. 1998).

Although the Commonwealth may under some circumstances waive sovereign immunity and Eleventh Amendment immunity, no such waiver has occurred here. In particular, there has

---

[9]Eleventh Amendment dismissals routinely occur on subject matter jurisdiction grounds. See e.g. Mills v. Maine, 118 F.3d 37, 41, 55-56 (1st Cir. 1997); cf. Parella v. Rhode Island Employees' Ret. Sys., 173 F.3d 46, 54-57 (1st Cir. 1999).

been no waiver to suit in the Federal Courts.[10]   See e.g. Irwin v. Commissioner of Dept. of Youth

Services, 448 N.E.2d 721, 728, 388 Mass. 810 (1983)("In sum, we find nothing in the legislative

history of G.L. c. 258, or in its terms, to suggest that the Commonwealth, by enacting G.L. c.

258, has waived, expressly or by implication, its Eleventh Amendment immunity to suit in

Federal courts." );  Woodbridge v. Worcester State Hospital, 384 Mass. 38, 42 (1981)("The

Commonwealth cannot be impleaded in its own courts except with its consent, and, when that

consent is granted, it can be impleaded only in the manner and to the extent expressed ... (by)

statute. . . .  Consent to suit must be expressed by the terms of a statute, or appear by necessary

implication from them.") (internal quotations and citations omitted).

There is nothing in G.L. c. 93, § 103 or Article CXIV that consents, either expressly or by

necessary implication, to a suit for damages or injunctive relief against the Commonwealth or its

officials in Federal Court.  While the Legislature has clearly consented to damages suits against

the Commonwealth in many other areas, G.L. c. 93, § 103, is not such a provision.

For all of the above reasons, Count V should be dismissed.

---

[10]"The rules of construction governing statutory waivers of sovereign immunity are
stringent. . . .  Consent to suit must be expressed by the terms of the statute or appear by
necessary implication from them." Ware v. Commonwealth, 409 Mass. 89, 91 (1991) see e.g.
Onofrio v. Department of Mental Health, 411 Mass. 657, 659 (1992).  The waiver of immunity to
a particular form of relief does not give rise to any "necessary implication" that immunity has
been waived as to "ancillary" forms of relief.  Ware, 409 Mass. at 91.  "In waiving its immunity,
the Commonwealth established certain rights of recovery which cannot be extended beyond those
expressly conferred by statute." Gurley v. Commonwealth, 363 Mass. 595, 600 (1973).  Indeed,
where a statute expressly states what forms of relief are available, it is an indication that the
Legislature did not intend other usually incidental forms of relief to be available.  General
Electric, 329 Mass. at 664.  Even if the Commonwealth consents to be sued, it can only be
impleaded in the way and to the extent that it has agreed to be impleaded.  Woodbridge v.
Worcester State, 384 Mass. at 42 (citing, Broadhurst v. Director of Division of Employment
Security, 373 Mass. 720 (1977) and quoting from General Electric Company v. The
Commonwealth of Massachusetts, 329 Mass. at 664 (1953)).

**CONCLUSION**

For all of the above reasons, Morin's claims should be dismissed as follows:

I.     Count IV, which alleges equal protection and due process violations against Doe on the basis of Morin's disability, should be dismissed because such claims are subsumed by Morin's Americans with Disability Act ("ADA") claim, Count I, and his Rehabilitation Act claim, Count II.

II.    Counts I (ADA), II (Rehabilitation Act), and III (ADA) should be dismissed to the extent that they claim damages because nowhere in the Second Amended Complaint has Morin alleged intentional discrimination or economic damages (even when all reasonable inferences are drawn in Morin's favor). And, Count III, which alleges a violation of the ADA's self evaluation requirement, cannot provide a basis for damages.

III.   Count IV, which alleges a violation of equal protection against Doe, should be dismissed in its entirety because nowhere in the Second Amended Complaint has Morin alleged intentional discrimination (even when all reasonable inferences are drawn in Morin's favor).

IV.    The procedural due process claim in Count IV should be dismissed because it constitutes a collateral attack on the Underlying Action, which, according to the Rooker-Feldman doctrine, precludes this Court from acquiring subject matter jurisdiction over it.

V.     Count V, which alleges a violation of G.L. c. 93 § 103 and Article CXIV of the Massachusetts Constitution, should be dismissed because the Commonwealth is

18

not a person and it has not waived its sovereign immunity nor its Eleventh

Amendment Immunity.

**COMMONWEALTH**

By Its Attorney,

**THOMAS F. REILLY
ATTORNEY GENERAL**

By: _____

Timothy M. Jones
Assistant Attorney General
Western Massachusetts Division
1350 Main Street, 4th Floor
Springfield, MA 01103
(413)784-1240 ext. 105
(413)784-1244 - Fax
BBO#618656

<u>CERTIFICATE OF SERVICE</u>

I, Timothy M. Jones, hereby certify this the 22nd day of August, 2005 that I served the Commonwealth's Memorandum in Support of Motion to Dismiss by First Class mail upon plaintiff's counsel as follows:

William J. Hunt
Michael B. Newman
Attorneys at Law
Clark, Hunt and Embry
55 Cambridge Parkway
Cambridge, MA 02142

By: _____

Timothy M. Jones

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO.05-30059-KPN

| | |
|---|---|
| MICHAEL MORIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COMMONWEALTH OF | ) |
| MASSACHUSETTS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## AFFIDAVIT OF DANIEL A. FORD

I, Daniel A. Ford, hereby depose and state as follows:

1.    I am an Associate Justice of the Superior Court of Massachusetts. I have served in this capacity since June 22, 1989.

2.    I served as the presiding judge in Berkshire Superior Court throughout the jury trial in Morin v. Malumphy, et al., BECV 2000-00338 (the "Morin case"). I understand that the plaintiff in the Morin case was Michael Morin, the same plaintiff in this case.

3.    The jury trial in the Morin case commenced on October 7, 2002 and concluded on October 16, 2002, with a verdict in favor of the defendants.

4.    Approximately one week before the trial commenced in the Morin case, I discussed with Clerk Deborah Capeless the fact that the elevator in the courthouse was not working, which would preclude the plaintiff from traveling in his wheelchair to the Superior Court courtroom. I was aware from the pleadings in the case that Mr. Morin's primary means of mobility was a wheelchair.

1

5.    In my discussion with Ms. Capeless, I asked her to contact Mr. Morin's attorney, Louis N. Massery, and inform him that the elevator was not operating and ask him how he desired to handle the situation. Mr. Massery was a high school friend of mine, so I knew him fairly well. I had previously notified all defense counsel of this connection to Mr. Massery, and they did not oppose me presiding over the trial.

6.    Ms. Capeless later informed me that she had spoken with Mr. Massery on the telephone. She stated that Mr. Massery wished to proceed with the trial as scheduled. He told her that they, Mr. Morin's attorneys and family, would make arrangements for transporting Mr. Morin to the Superior Court courtroom and otherwise accessing the courthouse. It is my understanding that Mr. Massery did not request any other means to facilitate providing access for Mr. Morin.

7.    Around the time that the trial commenced, I was aware that Mr. Morin's father, a former Pittsfield firefighter, had arranged for firefighters to carry Mr. Morin up the stairs to the courtroom. No one ever informed me that this was not a completely acceptable arrangement to Mr. Morin, his family, and his attorneys.

8.    On the day that Mr. Morin testified, Mr. Massery informed me after he and Mr. Morin arrived in the courtroom that the fire fighters had not been available to transport Mr. Morin to the courtroom. Mr. Massery stated that the firefighters had to respond to some sort of emergency. If I had been informed about this situation before it occurred or that Mr. Morin was traumatized by that experience, I would have asked counsel to propose solutions to resolve the situation. I was surprised to learn of the allegation in this matter that Mr. Morin was traumatized on that day because I recall that he testified quite well and seemed to make a favorable impression on the jury.

2

9.    Mr. Massery never moved for a continuance of the trial.  I knew that Mr. Massery was quite ill with cancer.  I believe he wanted to proceed with trying the case while he was healthy enough to do so.  Almost immediately after the trial concluded, Mr. Massery privately thanked me for trying the case and making sure that the trial commenced when it did and was not continued.  Mr. Massery died approximately one month after the trial concluded.

9.    I do not recall any attorneys in the case or any courthouse employees informing me of any problems concerning Mr. Morin's access to the courthouse or the courtroom (other than unavailability of the firefighters on the day Mr. Morin testified, as discussed above).  If I had become aware of any such problems or concerns, I and/or the courthouse staff would have attempted to immediately resolve them.

Signed under the penalties of perjury this _18_th day of August 2005.

Daniel A. Ford
Associate Justice
Massachusetts Superior Court

3

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO.05-30059-KPN

| | |
|---|---|
| MICHAEL MORIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COMMONWEALTH OF | ) |
| MASSACHUSETTS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AFFIDAVIT OF DEBORAH S. CAPELESS

I, Deborah S. Capeless, hereby depose and state as follows:

1.    I am the Clerk of Berkshire Superior Court. I have served in this position since
___1982___ .

2.    I served as Clerk throughout the time that the case of Morin v. Malumphy, et al.,
BECV 2000-00338, was pending in Berkshire Superior Court (the "Morin case"). I have
attached hereto a true and correct copy of the docket sheet from that case ("Docket
Sheet"). I understand that the plaintiff in the Morin case was Michael Morin, the same
plaintiff in this case.

3.    As disclosed on the Docket Sheet, a jury trial in the Morin case commenced on
October 7, 2002. Superior Court Judge Daniel A. Ford presided throughout the trial,
which concluded on October 16, 2002, with a verdict in favor of the defendants.
Judgment on the jury verdict was entered on October 18, 2002. The Court file and the
docket sheet reflect that the plaintiff did not appeal the final judgment.

1

4.     Approximately one week before the trial commenced in the <u>Morin</u> case, Judge Ford and I discussed the fact that the elevator in the courthouse was not working, which would preclude the plaintiff from traveling in his wheelchair to the Superior Court Courtroom, which was on the second floor. The elevator is generally in disrepair about one to two times per year, and it is usually repaired within one to two weeks. On this particular occasion, a replacement part had to be manufactured, so the elevator was expected to be out of service for approximately one month.

5.     Approximately one week before the trial commenced in the <u>Morin</u> case, I held a telephone conference with Mr. Morin's attorney, Louis N. Massery. In that discussion, I notified Mr. Massery that the elevator was out of service and I asked him how he desired to handle the situation. Mr. Massery stated that he wished to proceed with the trial as scheduled. He told me that Mr. Morin's attorneys and family, would make arrangements for transporting Mr. Morin to the Superior Court courtroom and otherwise accessing the courthouse. Mr. Massery did not request any other means to facilitate providing access to Mr. Morin, leaving me with the impression that he had no other concerns regarding access to and within the courthouse.

6.     Around the time that the trial commenced, I was aware that Mr. Morin's father, a former Pittsfield firefighter, had arranged for firefighters to carry Mr. Morin up the stairs to the courtroom. No one ever informed me that this was not a completely acceptable arrangement to Mr. Morin, his family, and his attorneys.

7.     On the day that Mr. Morin testified, I learned, after the fact, that that the fire fighters had not been available to transport Mr. Morin to the courtroom. Mr. Massery stated that the firefighters had to respond to some sort of emergency.

8.    Both during and after the trial I was not aware of any problems regarding Mr.

Morin's access to the courtroom or the courthouse (other than the unavailability of the

firefighters that I mentioned in the preceding paragraph). No one mentioned anything to

me about there being a problem. To my knowledge, no employees in the courthouse

became aware of any access issues that were not acceptable to Mr. Morin or his

attorneys. If they had become aware of such problems, I believe they would have let me

know immediately and we would have responded in an appropriate manner.

Signed under the penalties of perjury this  18  th day of August 2005.


Deborah Capeless
Clerk, Berkshire Superior Court


3

**Commonwealth of Massachusetts**
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket

## BECV2000-00338
### Morin et al v Malumphy et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 11/13/2000 | **Status** | Disposed: judgment after jury verdict (djuafver) | | |
| **Status Date** | 10/18/2002 | **Session** | A - Civil A - CtRm 1 | | |
| **Origin** | 1 | **Case Type** | B03 - MV negligence/pers injury/prop dmg | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 02/11/2001 | **Answer** | 04/12/2001 | **Rule12/19/20** | 04/12/2001 |
| **Rule 15** | 04/12/2001 | **Discovery** | 09/09/2001 | **Rule 56** | 10/09/2001 |
| **Final PTC** | 11/08/2001 | **Disposition** | 01/07/2002 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Michael Morin
Active 11/13/2000

**Private Counsel 323920**
Louis N Massery
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 543654**
William D Gillis
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 637611**
Jennifer K Rosen
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 543654**
William D Gillis
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 09/18/2002 Notify

A True Copy
Attest: _[signature]_ Clerk

MAS-20041213
capeless

Case 3:05-cv-30059-Commonwealth of Massachusetts MAP Filed 08/22/2005     Page 9 of 23     08/18/2005
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket
12:36 PM

## BECV2000-00338
## Morin et al v Malumphy et al

**Private Counsel 635825**
Gerald E Libby II
Massery Gillis
101 Merrimack Street
Boston, MA 02114-
Phone: 617-523-1125
Fax: 617-523-8652
Active 09/18/2002 Notify

**Plaintiff**
Morin,Robert A.,Indiv.& as Atty in Fact of Michael
Morin
Active 11/13/2000

**Private Counsel 323920**
Louis N Massery
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 543654**
William D Gillis
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 637611**
Jennifer K Rosen
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 543654**
William D Gillis
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 09/18/2002 Notify

MAS-20041213
capeless

Case 3:05-cv-30059-MAP Commonwealth of Massachusetts Filed 08/22/2005 Page 10 of 23 08/18/2005
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket
12:36 PM

## BECV2000-00338
## Morin et al v Malumphy et al

**Private Counsel 635825**
Gerald E Libby II
Massery Gillis
101 Merrimack Street
Boston, MA 02114-
Phone: 617-523-1125
Fax: 617-523-8652
Active 09/18/2002 Notify

**Plaintiff**
Morin,Helen,Indiv.& as Atty in Fact of Michael Morin
Active 11/13/2000

**Private Counsel 323920**
Louis N Massery
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 543654**
William D Gillis
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 637611**
Jennifer K Rosen
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 11/13/2000 Notify

**Private Counsel 543654**
William D Gillis
Massery Gillis
101 Merrimac Street
Boston, MA 02114
Phone: 617-523-1125
Fax: 617-523-8652
Active 09/18/2002 Notify

MAS-20041213
capeless

Case 3:05-cv-30059-MAP Document 11-2 Filed 08/22/2005 Page 11 of 23 08/18/2005
12:36 PM

Commonwealth of Massachusetts
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket

## BECV2000-00338
## Morin et al v Malumphy et al

**Private Counsel 635825**
Gerald E Libby II
Massery Gillis
101 Merrimack Street
Boston, MA 02114-
Phone: 617-523-1125
Fax: 617-523-8652
Active 09/18/2002 Notify

**Defendant**
William M. Malumphy
Answered 01/23/2001

**Private Counsel 542475**
Thomas P Schuler
Phillips Law Office (Donald E)
One Monarch Place
1414 Main Street, Suite 550
Springfield, MA 01144
Phone: 413-730-6350
Fax: 413-730-6361
Withdrawn 05/18/2001

**Private Counsel 026050**
John G Bagley
Morrison Mahoney LLP
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA 01115
Phone: 413-737-4373
Fax: 413-739-3125
Active 05/18/2001 Notify

**Private Counsel 632857**
Diane C Fernald
Morrison Mahoney LLP
1500 Main Street
Suite 2400
Springfield, MA 01115-5387
Phone: 413-737-4373
Fax: 413-739-3125
Active 05/18/2001 Notify

**Private Counsel 559166**
John C Flahive
Morrison Mahoney LLP
1500 Main Street
Suite 2400
Springfield, MA 01115
Phone: 413-737-4373
Fax: 413-739-3125
Active 05/18/2001 Notify

MAS-20041213
capeless

Case 3:05-cv-30059-MAP Document 4-2 Filed 08/22/2005 Page 12 of 23

08/18/2005
12:36 PM

Commonwealth of Massachusetts
BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket

## BECV2000-00338
## Morin et al v Malumphy et al

**Private Counsel 647746**
Erika D Barrie
Morrison Mahoney LLP
1500 Main Street Suite 2400
POBox15387
Springfield, MA 01115-5387
Phone: 413-737-4373
Fax: 413-739-3125
Active 09/26/2002 Notify

**Defendant**
Berkshire Concrete Corporation
Answered 01/23/2001

**Private Counsel 542475**
Thomas P Schuler
Phillips Law Office (Donald E)
One Monarch Place
1414 Main Street, Suite 550
Springfield, MA 01144
Phone: 413-730-6350
Fax: 413-730-6361
Withdrawn 05/18/2001

**Private Counsel 026050**
John G Bagley
Morrison Mahoney LLP
1500 Main Street, Suite 2400
P.O. Box 15387
Springfield, MA 01115
Phone: 413-737-4373
Fax: 413-739-3125
Active 05/18/2001 Notify

**Private Counsel 632857**
Diane C Fernald
Morrison Mahoney LLP
1500 Main Street
Suite 2400
Springfield, MA 01115-5387
Phone: 413-737-4373
Fax: 413-739-3125
Active 05/18/2001 Notify

**Private Counsel 559166**
John C Flahive
Morrison Mahoney LLP
1500 Main Street
Suite 2400
Springfield, MA 01115
Phone: 413-737-4373
Fax: 413-739-3125
Active 05/18/2001 Notify

Case Summary

Civil Docket

## BECV2000-00338
## Morin et al v Malumphy et al

| Out-of-state attorney | |
|---|---|
| Edward Paul Coady | |
| Coady & Associates | |
| 205 Portland Street | |
| Boston, MA 02114 | |
| Phone: 617-742-9510 | |
| Active 07/02/2002 Notify | |

**Plaintiff/intervenor**
Jiminy Peak Inc
Active 09/04/2002

**Private Counsel 546079**
Edward P Coady
Coady & Associates (Edward P)
205 Portland Street
5th floor
Boston, MA 02114
Phone: 617-742-9510
Fax: 617-742-9509
Active 09/04/2002 Notify

| ENTRIES | | |
|---|---|---|
| **Date** | **Paper** | **Text** |
| 11/13/2000 | 1.0 | Complaint & civil action cover sheet filed |
| 11/13/2000 | | Origin 1, Type B03, Track F. |
| 01/23/2001 | 2.0 | Notice of Appearance from Atty. Thomas P. Schuler, filed. |
| 01/23/2001 | 3.0 | ANSWER: of the Defendants and Jury Claim and Certificate of Service, filed. |
| 01/31/2001 | 4.0 | Service returned by delivering in hand to Rick Petricca, employee, agent, person in charge at the time of service for Berkshire Concrete, 550 Cheshire Rd., Pitts., MA |
| 01/31/2001 | 5.0 | SERVICE RETURNED: by leaving at the last and usual place of abode of William M. Malumphy, State Rd., Richmond, MA and by mailing first class to the above address on 1/19/01 |
| 05/18/2001 | 6.0 | Notice Of Appearance, filed |
| 05/18/2001 | 7.0 | Notice Of Withdrawal Of Appearance, filed |
| 06/21/2001 | 8.0 | Application Pursuant To Mass. R.Civ. P. 33(a) For Entry Of Final Judgment For Relief, filed |
| 08/23/2001 | | Notice sent to appear for pre-trial conference on Friday, November 9, 2001 at 2:00 pm to counsel. |
| 11/05/2001 | | Faxed Letter from Jennifer K. Rosen stating assent of the parties to postpone pre-trial conference scheduled for November 9, 2001 at 2:00 pm for approximately two months, received. |
| 11/07/2001 | 9.0 | Faxed -Joint Affidavit in Support Of Parties' request to extend pretrial conference. |
| 12/03/2001 | | Notice sent to appear for pre-trial conference on Wednesday, January 9, 2002 at 2:00 pm to counsel. |
| 12/07/2001 | | Faxed letter from John G Bagley, Esq. requesting per agreement of counsel to reschedule pre-trial conference from January 9, 2002 to Monday, January 28, 2002 at 2:00 pm received. |
| 2/07/2001 | 10.0 | Notice sent to appear for pre-trial conference on Monday, January 28, 2002 at 2:00 pm to counsel. |

MAS-20041213
capeless

Case 3:05-cv-30059-MAP Commonwealth of Massachusetts Filed 08/22/2005    Page 14 of 23    08/18/2005

BERKSHIRE SUPERIOR COURT
Case Summary
Civil Docket

08/18/2005
12:36 PM

# BECV2000-00338
## Morin et al v Malumphy et al

| Date | Paper | Text |
|---|---|---|
| 01/28/2002 | 11.0 | Joint pre-trial memorandum filed |
| 01/28/2002 | 12.0 | ORDER after pre-trial conference, filed. Case ordered FIRST CASE OUT-OCTOBER 2002 (Ford, J). Notice to counsel on 1/28/2002. |
| 06/03/2002 | 13.0 | Jiminy Peak, Inc., moves this court for permission to intervene for the purpose of protecitng the Jiminy Peka Employee Welfare and Benefit pLans subrogation and certificate of service |
| 06/04/2002 | | MOTION (P#13)-DENIED without prejudice to renewal following compliance with Superior Court Rule 9A, (Thomas J. Curley, Jr., Justice). Notices mailed 6/4/2002. |
| 07/02/2002 | 14.0 | Jiminy Peak, Inc's Motion to Intervene, filed. |
| 07/02/2002 | 15.0 | Affidavit of compliance with Superior Court Rule 9A as to Jiminy Peak Inc's Motion to Intervene, filed. |
| 07/02/2002 | 16.0 | Notice of filing and list of papers, filed. |
| 08/30/2002 | | MOTION (P#14) - There being no opposition, the motion is ALLOWED (Ford, J). Notice mailed on 9/4/2002. |
| 09/12/2002 | 17.0 | Plaintiffs' addendum To Joint pre-trial memorandum filed |
| 09/18/2002 | 18.0 | Notice of Appearance of William D. Gillis, Jr. and Gerald E. Libby II Esq. for the plaintiffs, Michael Morin, Robert A. Morin and Helen Morin, with certificae of service, filed. |
| 09/26/2002 | 19.0 | Atty Erika M.D. Barrie notice of appearance for William M. Malumphy and Berkshire Concrete Corporation |
| 09/30/2002 | 22.0 | Plaintiff Michael Morin's MOTION in limine to exclude the reports (or portons thereof) of Sergeant Eino Thompson and officer Timothy Sorrell and to exclude certain testimony base upon portons of said reports. |
| 10/01/2002 | 20.0 | Plaintiff Michael Morin's MOTION in limine to redact any reference To Michael Morin Hitting A Rock Or A Stone On Route 7, Lanesboro, MA On June 15, 1998 |
| 10/01/2002 | 21.0 | Plaintiff Michael Morin's MOTION in limine to introduce day-in-the-life video of Michael Morin |
| 10/01/2002 | 23.0 | Plaintiffs' Motion In Limine to Redact any testimony of Laurie Knepper MD relative to Michael Morin hitting a rock or a stone on Route 7, Lanesboro, MA on June 15, 1998, filed. |
| 10/03/2002 | 24.0 | Defendants Motion in Limine to Exclude Evidence of Michael Morin's Bicycling Practices, filed. |
| 10/03/2002 | 25.0 | Defendants Motion In Limine to Exclude reference to defendant, Berkshire Concrete Company by any other business name, filed. |
| 10/03/2002 | 26.0 | Defendants' Motion In Limine to Exclude Testimony and/or conduct a voir dire of plaintiff's expert, James M Green, filed. |
| 10/03/2002 | 27.0 | Defendants' Motion In Limine to Exclude Evidence of Trooper Thompson's Road Detail Jobs, filed. |
| 10/03/2002 | 28.0 | Plaintiffs' Motion For A View, filed. |
| 10/04/2002 | 29.0 | Plaintiffs affidavit of written notice of intent to offer medical bills as evidence, pursuant to MGLc 233, sec 79G, filed. |
| 10/04/2002 | 30.0 | Memorandum in support of defendant's motion in limine to exclude testimony and/or to conduct a voir dire of plaintiff's expert James |

MAS-20041213    Case 3:05-cv-30059-MAP  Document 14-3  Filed 08/22/2005    Page 15 of 23  08/18/2005
capless                    Commonwealth of Massachusetts                                    12:36 PM
                              BERKSHIRE SUPERIOR COURT
                                   Case Summary
                                   Civil Docket

## BECV2000-00338
## Morin et al v Malumphy et al

| Date | Paper | Text |
|------|-------|------|
| | 30.0 | M. Green filed. |
| 10/07/2002 | | Defendant's motion in limine to exclude evidence of Michael Morin's bicycling practices allowed as to "habit" evidence; denied as to the balance, (Ford, J.). |
| 10/07/2002 | | Defendant's motion in limine to exclude evidence of Trooper Thompson's road detail jobs denied, (Ford,J.). |
| 10/07/2002 | 31.0 | Plaintiff's motion to amend complaint filed -waived. |
| 10/07/2002 | | Plaintiff's motion in limine to redact any testimony of Laurie Knepper, M.D., relative to Michael Morin hitting a rock or a stone on Route 7, Lanesboro, Massachusetts on June 15, 1998 allowed, (Ford, J.). |
| 10/07/2002 | | Plaintiff's motion for a view allowed, (Ford, J.). |
| 10/07/2002 | | Plaintiff's motion in limine to introduce day-in-the-life video of Michael Morin allowed, (Ford,J.). |
| 10/07/2002 | 32.0 | Defendant's list of trial witnesses filed. |
| 10/07/2002 | | Trial commenced before (Ford, J.). Court orders fourteen jurors impanelled. |
| 10/07/2002 | 33.0 | List of jurors filed. Jury of fourteen impanelled, not sworn. Released for the day until Tues. 9:00 a.m. |
| 10/08/2002 | | Trial continued before (Ford,J.). Jury sworn. Court appoints 4-2 Kathleen Shove forelady. Pre charge given to jury. Jury will be allowed to take notes. Jury went on a view. Officers Patella and Hadley sworn with jury. |
| 10/08/2002 | | Defendant's motin in limine to exclude testimony and/or conduct a voir dire of plaintiff's expert James M. Green denied, (Ford,J.). |
| 10/08/2002 | | At 9:08 a.m. juror 2-7 Rolf Hansen spoke to the court on the record. after discussion, juror excused; proceeding with 13 jurors. |
| 10/09/2002 | | Trial continued before (Ford, J.). |
| 10/10/2002 | | Trial continued before (Ford,J.). |
| 10/11/2002 | | Trial continued before (Ford, J.). Plaintiff rests. |
| 10/11/2002 | 34.0 | Defendant's motion for directed verdict at the close of the plaintiff's case filed and denied, (Ford, J.). |
| 10/15/2002 | | Trial continued before (Ford,J.). Defendant rests. |
| 10/15/2002 | | Juror 1-1 Rose Millis spoke to the court on the record; after discussion with juror-excused; proceeding with 12 jurors. |
| 10/15/2002 | 35.0 | Defendant's motion for a directed verdict at the close of all of the evidence filed and denied, (Ford, J.). |
| 10/15/2002 | 36.0 | Defendant's request for ruling on plaintiff's entitlement to jury instruction on motor vehicle statutory violations filed and denied, (Ford,J.). |
| 10/15/2002 | 37.0 | Plaintiff's proposed jury instructions filed. |
| 10/15/2002 | 38.0 | Defendant's requested jury instructions filed. |
| 10/15/2002 | 39.0 | Plaintiff's supplemental proposed jury instruction filed. |
| 10/15/2002 | 40.0 | Defendant's proposed medicaid instruction filed. |
| 10/15/2002 | | Final arguments held today. Jury released until 9:00 a.m. Wed. |
| 10/15/2002 | 41.0 | List of exhibits filed. |

## BECV2000-00338
### Morin et al v Malumphy et al

| Date | Paper | Text |
|---|---|---|
| 10/16/2002 | | Trial continued before (Ford, J.). Judge's instructions held. |
| | | Officers Hadley and Lennon sworn with jury. |
| 10/16/2002 | 42.0 | Special verdict slip for the defendants returned affirmed and filed. |
| | | Jury discharged 12:00 |
| 10/18/2002 | 43.0 | Judgment on jury verdict for the defendants entered. Copies certified |
| | | to counsel. |

| EVENTS | | | |
|---|---|---|---|
| Date | Session | Event | Result |
| 11/09/2001 | Civil A - CtRm 1 | Conf: final pre-trial | Event not held-joint request |
| 01/09/2002 | Civil A - CtRm 1 | Conf: final pre-trial | Event not held-req of Plaintiff |
| | | Pre-trial rescheduled per agreement of counsel to January 28, 2002 at 2:00 pm. Notice mailed on 12/10/2001. | |
| 01/28/2002 | Civil A - CtRm 1 | Conf: final pre-trial | Event held as scheduled |
| 10/07/2002 | Civil A - CtRm 1 | TRIAL: by jury | Event held as scheduled |

**3**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO.05-30059-KPN

|  |  |
|---|---|
| MICHAEL MORIN,<br><br>        Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF<br>MASSACHUSETTS,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF DEBORAH SCHILLING

I, Deborah Schilling, hereby depose and state as follows:

1.      I am the Assistant Clerk in the Berkshire Superior Court.

2.      I served as Assistant Clerk during the jury trial in Morin v. Malumphy, et al., BECV 2000-00338 (the "Morin case"). I also presently serve as Berkshire Superior Court's Americans with Disability Act (ADA) Coordinator, and have done so since about the Spring of 2002. Generally, the ADA Coordinator is responsible for addressing the access needs of disabled individuals within the courthouse. The Commonwealth's Administrative Office of the Trial Court provides training to the ADA Coordinators for courthouses throughout the Commonwealth.

3.      Approximately one week before the trial commenced in the Morin case, I became aware that even though the elevator was out of service, Mr. Morin's attorney, Louis Massery, wished to proceed with the trial as scheduled. I understood that Mr. Morin's attorneys and family, would make arrangements for transporting Mr. Morin to the

1

Superior Court courtroom and otherwise accessing the courthouse. I was never informed that Mr. Massery requested any means to facilitate providing access to Mr. Morin, leaving me with the impression that he had no other concerns regarding access to and within the courthouse.

4.      Around the time that the trial commenced, I was aware that Mr. Morin's father, a former Pittsfield firefighter, had arranged for firefighters to carry Mr. Morin up the stairs to the courtroom. No one ever informed me that this was not a completely acceptable arrangement to Mr. Morin, his family, and his attorneys.

5.      On the day that Mr. Morin testified, I learned, after the fact, that that the fire fighters had not been available to transport Mr. Morin to the courtroom. Mr. Massery stated that the firefighters had to respond to some sort of emergency.

6.      Both during and after the trial I was not aware of any problems regarding Mr. Morin's access to the courtroom or the courthouse (other than the unavailability of the firefighters that I mentioned in the preceding paragraph). No one mentioned anything to me about there being a problem. To my knowledge, no employees in the courthouse became aware of any access issues that were not acceptable to Mr. Morin or his attorneys. If they had become aware of such problems, I believe they would have let me know immediately and we would have responded in an appropriate manner.

7.      I understand that in this case, Mr. Morin has raised courthouse accessibility issues regarding doorways, sanitary facilities, public telephones, courthouse entry, and parking. To my knowledge, neither Mr. Morin, his attorneys, nor his family ever raised any issues with these or any other features in the courthouse. In fact, at the time that the Morin case was tried the Superior Courthouse provided: (a) handicapped parking adjacent to the building; (b) a concrete wheelchair ramp to the building, with railings; (c) a number of

2

telephones that could be used by disabled individuals who were accessing the courthouse, including one pay-phone that was at a height which could be reached by someone in a wheelchair; (d) a recently built, large unisex restroom that was specifically designed and designated for mobility impaired individuals; and (e) doorways to publicly accessible offices that were sufficiently wide for wheelchair access.

Signed under the penalties of perjury this _18_ th day of August 2005.

Deborah Schilling
Assistant Clerk
Berkshire Superior Court

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

RECEIVED

5 2? 2005

ATTORNEY GENERAL

CIVIL ACTION NO.05-30059-KPN

| | |
|---|---|
| MICHAEL MORIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COMMONWEALTH OF | ) |
| MASSACHUSETTS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## AFFIDAVIT OF ROGER ALBRECHT

I, Roger Albrecht, hereby depose and state as follows:

1.    I am the Benefits Manager and the ADA Coordinator for the Massachusetts Administrative Office of the Trial Court.

2.    The Administrative Office of the Trial Court has done much to date to help bring the Commonwealth's numerous old courthouses into compliance with the Americans with Disabilities Act ("ADA") and to provide ADA training to court personnel. In addition, the Commonwealth's Division of Capital Asset Management ("DCAM") announced recently that in the Fall of 2005 it will commence a long-planned evaluation of all state courthouses throughout the Commonwealth to determine the extent to which they comply with the Americans with Disabilities Act ("ADA"). Berkshire Superior Court will be one of the first courts that will be evaluated. It is my understanding that the Administrative Office of the Trial Court and DCAM will then create and implement a

1

plan to address ADA compliance issues throughout the Commonwealth's courthouses.

Signed under the penalties of perjury this ⎮8 th day of August 2005.

_____ Roger CS Albrecht
Roger Albrecht
Benefits Manager and ADA Coordinator
Massachusetts Administrative Office of the
Trial Court