UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

DOCKET NO. 05-30059-KPN

| | |
|---|---|
| MICHAEL MORIN<br>　　　Plaintiff<br><br>v.<br><br>COMMONWEALTH OF<br>MASSACHUSETTS and JOHN DOE,<br>Individually and in his Official<br>Capacity,<br>　　　Defendants | PLAINTIFF, MICHAEL MORIN'S,<br>OPPOSITION TO DEFENDANTS'<br>MOTION TO DISMISS AND<br>CROSS-MOTION TO STRIKE |

　　　Now comes the plaintiff, Michael Morin, in the above-captioned matter and hereby opposes the motion to dismiss filed by the defendants, Commonwealth of Massachusetts and John Doe, pursuant to Fed. R. Civ. P. Rule 12(b)(1) and 12(b)(6). In support of his opposition, Morin states that the Commonwealth cannot meet its burden of demonstrating that Congress intended to foreclose § 1983 relief in this situation.  Regardless, where the only claims Morin has brought against the defendant John Doe are pursuant to 42 U.S.C., § 1983, such claims are not subsumed by his ADA and Rehabilitation Act claims against the Commonwealth.  Where the Commonwealth's conduct in this case clearly is demonstrative of a reckless disregard of Morin's federally protected rights, Morin has adequately fulfilled the requirement of an "intentional" discrimination allegation.  Further, Morin is entitled to seek damages for pain and suffering and emotional harm under the ADA and Rehabilitation Act.  The Commonwealth has misconstrued the state of the law in this regard.

　　　Morin's due process claims do not constitute a collateral attack on, nor are they inextricably intertwined with, his previous tort action.  The Rooker-Feldman Doctrine

simply does not apply. Finally, where the Commonwealth has been defined as a "person" under M.G.L. c. 151B, and there is no congressional intent to suggest otherwise, the Commonwealth should be considered a "person" under M.G.L. c. 93, § 103 and Morin's claims pursuant to this statute should survive.

Morin also cross-moves to strike the Affidavits of Daniel A. Ford, Deborah S. Capeless, Deborah Schilling, and Roger Albrecht submitted by the defendants in support of their motion to dismiss. These affidavits have no relevance to the jurisdictional issues at hand, and are simply self-serving statements replete with hearsay, offered to comment on the merits of Morin's discrimination case or the measure of his damages. As such, these affidavits should be stricken from the records and not considered by this Court.

In further support of his opposition, the plaintiff Morin submits the following memorandum of reasons:

### A.  OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### STATEMENT OF THE CASE

The plaintiff, Michael Morin, suffers from a form of spastic quadraparesis and has only limited use of his upper extremities. He also suffers from a seizure disorder and severe cognitive and mental impairments. Mr. Morin is non-ambulatory and requires a wheelchair for all mobility. He is a disabled individual as the term is used under § 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act of 1990 ("ADA"). (Plaintiff's Second Amended Complaint, ¶¶ 5-9.)

Morin's disabilities are the result of an accident that occurred on June 15, 1998 when he was struck by a cement truck while riding his bicycle. In November 2000, Morin brought a tort action in Berkshire Superior Court against the cement truck

driver and the owner of the truck.  The jury trial of that tort action was scheduled to proceed on or about October 7, 2002.  (Id. at ¶¶ 8-11.)

Prior to that trial date, the elevator in the Pittsfield Superior Courthouse broke down and was not functioning.  As a result, the courtroom in which Morin's trial was to be held could be accessed only by climbing over three flights of stairs.  The Morin family received no prior notification of the elevator malfunction, nor were they provided with any options to allow Michael Morin access or to have the trial held at an alternate time or location.  As a result, Morin was not able to attend most of his trial.  On the day that he testified, Morin's parents carried their son's wheelchair up three flights of stairs into the courtroom, causing Morin to suffer trauma a terrible seizures.  (Id. at ¶¶ 12-23.)

Morin has brought this action against the Commonwealth setting forth claims under the ADA, the Rehabilitation Act, violation of 28 C.F.R., § 35.105 and M.G.L. c. 93, § 103.  Morin has also brought claims against the defendant John Doe for violation of 42 U.S.C., § 1983.  Making a variety of different arguments, the defendants have moved to dismiss all of Morin's claims.  Morin now files this opposition in response and cross-motion to strike the affidavits submitted by the defendants in support of their motion.

## STANDARD OF REVIEW

When evaluating the sufficiency of a complaint pursuant to Mass. R. Civ. P. 12(b)(6), the court must accept as true the allegations of the complaint, as well as any reasonable inferences to be drawn from them in the Plaintiff's favor.  See Fairneny v. Savogran Co., 422 Mass. 469, 470 (1996).  The complaint should not be dismissed, "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support

3

of his claim which would entitle him to relief." Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). "A court's inquiry is a limited one, focusing not on whether the Plaintiff will ultimately prevail but on whether the Plaintiff should be entitled to offer evidence to support a claim." Canty v. Old Rochester Regional Sch. Dist., 54 F. Supp. 2d 66, 68 (D. Mass. 1999), citing Doe v. Londonderry Sch. Dist., 970 F. Supp. 64, 70 (D.N.H. 1997).

In surviving the defendants' motion to dismiss, Morin carries a "relatively light" burden. See Gibbs Ford, Inc. v. United Truck Leasing Corp., 399 Mass. 8, 13 (1987). In addition, in reviewing defendants' motion to dismiss, this Court must accord Plaintiff's Complaint a "generous reading." See New England Insulation Co. v. General Dynamics Corp., 26 Mass. App. Ct. 22, 29 (1982). When such a generous reading is accorded, the only reasonable conclusion that this Court can reach is that defendants' Motion to Dismiss must be denied.

## ARGUMENT

**I.     MORIN'S § 1983 CLAIMS AGAINST THE DEFENDANT, JOHN DOE, ARE DISTINCT FROM, AND ARE NOT SUBSUMED BY, HIS ADA AND REHABILITATION ACT CLAIMS AGAINST THE COMMONWEALTH.**

The defendants argue that Count IV of Morin's complaint, alleging that John Doe violated Morin's due process and equal protection rights in violation of 42 U.S.C., § 1983 "should be dismissed because they are subsumed by the ADA and Rehabilitation Act claims." (Defendants' Memorandum, p. 3.) In support of this argument, the defendants rely primarily on Meara v. Bennett, 27 F. Supp.2d 288 (D. Mass. 1998), where the court observed that "[g]enerally speaking, a claim under § 1983 may not be asserted based upon the violation of a statute that itself already

4

provides 'a comprehensive enforcement mechanism for protection of a federal right.'" Id. at 291 (quoting Smith v. Robinson, 468 U.S. 992, 1003, 104 S. Ct. 3457 (1984)). The Meara case, however, essentially involved employment discrimination claims and the court found that there was no independent basis for Meara's job discrimination claims under § 1983. Id.

In contrast, the defendant John Doe's conduct in this matter worked to deny Morin's due process and equal protection rights to courthouse access as secured by the Constitution and laws of the United States. See Tennessee v. Lane, 541 U.S. 509, 124 S. Ct. 1978 (2004) (holding that Title II as applied to cases implicating the fundamental right to access to the courts constituted a valid exercise of Congress's authority). Further, both this Court and the United States Supreme Court have upheld a plaintiff's right to bring § 1983 claims in conjunction with claims under Title II of the ADA. See, e.g., Olmstead v. L.C. by Zimring, 527 U.S. 581, 119 S. Ct. 2176 (1999) (acknowledging rights of mentally disabled women to bring claims under § 1983 and Title II in connection with discriminatory treatment at the hands of Georgia healthcare officials and remanding the case for further findings on the alleged statutory violations); Navedo v. Maloney, 172 F. Supp.2d 276 (D. Mass. 2001) (upholding plaintiff's right to bring claims under § 1983 and Title II against state corrections officials, alleging that their refusal to provide wheelchair access deprived him of his civil rights and caused severe and irreparable injuries, and denying in part the defendant's summary judgment motion.)

Morin, unlike the plaintiff in Meara, has brought § 1983 claims against the defendant John Doe alleging the deprivation of his fundamental due process rights of equal access to the court system. As in Olmstead and Navedo, these constitutional claims are not subsumed by Morin's claims under the ADA or Rehabilitation Act. In

5

addition, it must be noted that Morin has brought only § 1983 claims against the defendant John Doe. Where Morin has not brought claims under the ADA or Rehabilitation Act against the defendant John Doe, such claims cannot subsume his § 1983 claims against that defendant. Consequently, the defendants' motion to dismiss Count IV of the plaintiff's complaint should be denied.

    **II.    UNDER <u>TENNESSEE V. LANE</u>, MORIN IS ENTITLED TO SEEK DAMAGES IN HIS CLAIMS FOR THE DEFENDANTS' VIOLATION OF THE ADA AND REHABILITATION ACT.**

The defendants seek to have Morin's claims under the ADA and Rehabilitation Act dismissed to the extent that they claim damages, without addressing or even mentioning the Supreme Court's decision in <u>Tennessee v. Lane</u>, 541 U.S. 509, 124 S. Ct. 1978 (2004). Based on the <u>Lane</u> decision, the defendants' motion to dismiss must be denied.

In <u>Lane</u>, the named plaintiffs were effectively denied the opportunity to participate in Tennessee court proceedings because the state's courthouses were not physically accessible to individuals with disabilities. <u>Id.</u> at 513. One of the plaintiffs, Lane, alleged that he was forced to crawl up two flights of stairs to get to a courtroom in order to answer to a set of criminal charges. <u>Id.</u> at 514. Like Morin, the plaintiffs in <u>Lane</u> filed their action seeking damages and equitable relief pursuant to Title II of the ADA and the Rehabilitation Act. The <u>Lane</u> court held that Title II constitutes a valid exercise of Congress's authority under § 5 of the Fourteenth Amendment to "validly subject the states to private suits for money damages…to enforce the constitutional right of access to the courts." <u>Id.</u> at 531. The <u>Lane</u> court noted that "Title II's enforcement provision incorporates by reference § 505 of the Rehabilitation Act of

1973...which authorizes private citizens to bring suits for money damages." Id. at 517.

Absent from Lane is any suggestion that the plaintiffs in that case were required to allege intentional discrimination and economic loss in order to maintain a claim for damages. There was no allegation that the State of Tennessee intentionally made their courthouses inaccessible to persons with physical disabilities. Nor is there any indication in Lane that a plaintiff cannot bring claims under the ADA and Rehabilitation Act arising out of a deprivation of courthouse access unless he can establish economic loss. Moreover, the defendants rely chiefly on the case of Nieves Marquez v. Puerto Rico, 353 F.3d 108 (1st Cir. 2003) for the proposition that "a claim for damages under the ADA or Rehabilitation Act must sufficiently allege intentional discrimination and economic loss." (Defendants' Memorandum of Law, p. 5) (emphasis added). This argument, however, misstates the findings of Nieves, which held only that compensatory damages are available under § 504 and Title II only for intentional discrimination. Nieves, 353 F.3d at 126 (citing Alexander v. Sandoval, 532 U.S. 275, 280-81, 121 S. Ct. 1511 (2001) (holding that compensatory damages are available under Title VI only for intentional discrimination)).

What the defendants fail to mention in their argument is that the Nieves court also acknowledged that compensatory damages may or may not include damages for emotional harm or pain and suffering. Id. The defendants wrongly cite Schultz v. Young Men's Christian Association of the United States, 139 F.3d 286, 290-91 (1st Cir. 1998) for the proposition that emotional harm or pain and suffering damages are "insufficient to support a claim for discrimination under the ADA or Rehabilitation Act." (Defendants' Memorandum of Law, p. 6.)

7

The Schultz court made no such finding, nor has any other court in this jurisdiction. Rather, the Schultz court specifically stated: "We do not hold that damages for emotional injury are precluded in all cases under section 504." Id. at 291. Instead, the First Circuit has, both in Schultz and in Nieves, left open the question of whether damages for emotional harm or pain and suffering could be available in other circumstances, such as where the conduct was "plainly unlawful (e.g., racially motivated denial of jobs or housing or public accommodations), flagrantly humiliating, or both." Schultz, 139 F.3d at 291 n.3.

To the extent that "intentional" discrimination might be seen as a requirement for Morin to pursue a claim for damages under the ADA and Rehabilitation Act, a closer inspection of the meaning of this term in the context of these type of constitutional cases is warranted. In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994), the Supreme Court held that the "deliberate indifference standard for finding a violation of the cruel and unusual punishment protections of the Eighth Amendment to the Constitution, could be met without a finding that prison officials deliberately or intentionally caused the harm. Rather, while deliberate indifference entails something more than mere negligence, it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. Thus, deliberate indifference can be found if a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. See also, Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002) (finding that deliberate indifference standard met by less than intentional conduct allegations).

In the context of punitive damage awards under the ADA, the Supreme Court has held that it is not necessary to establish that the defendant actually intended to discriminate. Rather, the appropriate standard is for a finding of "malice" or "reckless indifference." As such, the terms malice or reckless indifference pertain to the defendant's "knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Kolstad v. American Dental Association, 527 U.S. 526, 119 S. Ct. 2118 (1999).

Thus, even if Morin is required to demonstrate some form of intentional discrimination, he clearly will be able to satisfy this requirement. As alleged in Morin's complaint, the defendants were fully aware of Morin's physical disability yet took no affirmative steps to accommodate him or provide program access. It is not necessary that Morin establish that the defendants intended to discriminate against him or cause him harm. Morin need only establish that the defendants acted with a reckless disregard or indifference to the knowledge that they may be acting in violation of federal law. Given the resources available to the Commonwealth, which include the employment of an ADA coordinator and the fact that compliance and program access had been required for well over ten years, it should be easy for Morin to establish that the defendants' conduct was sufficiently intentional under the law.

The defendants also argue that Count III, alleging violation of 28 C.F.R., § 35.105, should be dismissed because "[d]amages are not available for a violation of this regulation." (Defendants' Memorandum, p. 7.) In support of this argument, the defendants cite only an Arkansas District Court case. Id. Defendants do not cite any authority in this jurisdiction which would preclude a damages award for a violation of § 35.105. However, even the authority cited by the defendants, Matthews v. Jefferson, 29 F. Supp.2d 525, 540 (W.D. Ark. 1998), states that a "plaintiff may use evidence of

9

failure to comply with (§ 35.105) to buttress his claim of discrimination. He just may not recover separate damages due to a failure to complete the proper self-evaluation or transition plan or to comply with the timeline set forth therein." Id. Therefore, even under the Arkansas District Court decision, Morin may use evidence of the defendants' failure to conduct a proper self-evaluation to support his damages claims under the ADA and the Rehabilitation Act. The defendants' motion to dismiss these damages claims should be denied as a result.

### III.    MORIN'S DUE PROCESS CLAIMS ARE NOT BARRED BY THE ROOKER-FELDMAN DOCTRINE.

The defendants argue that Morin's due process claims should be dismissed under the Rooker-Feldman Doctrine because they are "essentially and substantially a collateral attack on the Underlying Action and...inextricably intertwined with that action." (Defendants' Memorandum, p. 8.) In making this argument, however, the defendants seek to contort and expand the Rooker-Feldman Doctrine and ignore the fact that Morin's due process claims in this case are entirely independent from any state court judgment.

Upon noting that the Rooker-Feldman Doctrine has often been "misperceived" and "construed to extend far beyond the contours of the Rooker and Feldman cases," the Supreme Court recently redefined the "narrow ground" properly occupied by the Rooker-Feldman Doctrine in Exxon Mobile Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517, 161 L. Ed.2d 454 (2005). In that case, the unanimous Court held that the Rooker-Feldman Doctrine "is confined to cases of the kind from which the Doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 1521-22.

10

According to these narrow confines as defined by the Supreme Court, Morin's due process claims in this matter are simply not barred by the Rooker-Feldman Doctrine. Morin is not seeking to have this court review or reject the judgment entered by the Pittsfield Superior Court in his tort action. Morin's due process claims are separate and apart from the state court judgment and are certainly not "inextricably intertwined" with that judgment. Indeed, Morin's claims in this case would have arisen regardless of the outcome in his tort trial. Indeed, a favorable outcome in the tort action for Morin would not have changed the fact that the defendants in the instant case violated his federal rights and denied him access. Morin still would have had to endure the humiliation and painful seizures caused by his parents having to carry him up the stairs to attend his own trial. The defendants' motion to dismiss Morin's due process claims should be denied.

### IV.  THE COMMONWEALTH IS SUBJECT TO LIABILITY FOR ITS VIOLATION OF M.G.L. c. 93, § 103.

The defendants contend that the Commonwealth cannot be liable for a violation of M.G.L. c. 93, § 103 because it is not a "person" or entity covered by the statute. (Defendants' Memorandum of Law, p. 15.) In support of this argument, the Commonwealth points to some language contained in the statute which provides that a civil action may be commenced for a violation of § 103 "in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business." M.G.L. c. 93, § 103(b). The Commonwealth also cites a Massachusetts Superior Court case where a judge interpreted § 103 to not include the Commonwealth. Buckley v. Department of Mental Health, 1 Mass. L. Rptr. 577 (Mass. Super. Ct. 1994) (observing that the definition of a "person" in M.G.L. c. 4, § 7

11

includes corporations, societies, associations, and partnerships, but not the Commonwealth).

If the legislature had intended to limit the application of M.G.L. c. 93, § 103 only to "persons" it certainly had an opportunity to do so in a clear and unambiguous fashion, rather than inserting a rather vague reference to a "person" at the end of a sentence discussing jurisdictional options for a violation of the statute. A fair and plain reading of M.G.L. c. 93, § 103 is that the statute was not intended to have its applicability restricted in such a fashion.

Nevertheless, to the extent that M.G.L. c. 93, § 103 is considered to apply only to "persons," the Commonwealth should indeed be considered a "person" covered by the statute. Although the defendant and the Superior Court judge in <u>Buckley</u> point to the definition of the term "person" in M.G.L. c. 4, § 7, this definition does not <u>exclude</u> the Commonwealth, it merely states that corporations, societies, associations, and partnerships are <u>included</u>. Further, and perhaps more importantly, both the defendants and the Superior Court judge in <u>Buckley</u> appear to have been overlooked the fact that a more specific definition of the term "person" applicable to M.G.L. c. 93, § 103 <u>does</u> include the Commonwealth.

M.G.L. c. 93, § 103(a) looks to M.G.L. c. 151B to define the terms "handicap" and "age." The reference to these definitions makes sense, of course, because c. 151B is a directly-related statutory provision addressing unlawful discrimination. Chapter 151B also defines the term "person" as follows:

> The term "person" includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, <u>and the Commonwealth and all political subdivisions, boards, and commissions thereof.</u>

M.G.L. c. 151B, § 1 (emphasis added). It is a basic cannon of statutory interpretation that general statutory language must yield to that which is more specific. TBI, Inc. v. Board of Health North Andover, 431 Mass. 9, 18, 725 N.E.2d 188 (2000). Certainly the definition of "person" contained in c. 151B must govern here where it is more inclusive than the definition contained in c. 4, § 7 and where c. 151B is so closely related to the purposes of c. 93, § 103.[1]

It follows that where the Legislature has, through the definitions and language of its anti-discrimination laws as set forth in c. 151B and c. 93, § 103, included the Commonwealth in the class of persons or entities that are subject to being sued for violation of these laws, the Commonwealth has waived any right it might have had to sovereign or Eleventh Amendment immunity to Morin's claims. Further, Article 114 of the Massachusetts Constitution was derived from and modeled after the Rehabilitation Act. Guckenberger v. Boston University, 974 F. Supp. 106, 150 (D. Mass. 1997); Layne v. Superintendent of Mass. Correctional Inst., 406 Mass. 156, 159, 546 N.E.2d 166 (1989). As such, it follows that in doing so the Commonwealth intended to subject itself to the same remedies for violation of these laws and waived any immunity rights that it might have had. The defendants' motion to dismiss should, as a result, be denied.

## B. CROSS-MOTION TO STRIKE

Morin cross-moves to strike the four affidavits submitted by the defendants in support of their motion to dismiss. These affidavits are of Daniel A. Ford, the

---

[1] It should be noted that the inclusion of states within the definition of a "person" in statutory framework is far from unprecedented. See, e.g., Commonwealth of Massachusetts v. United States, 296 F.2d 336 (1st Cir. 1961) (holding that the subject matter, context, legislative history, and executive interpretation made it plain that Congress intended to include states within the term "person" as used in § 6332 of the Internal Revenue Code).

13

presiding judge at Morin's tort trial in Berkshire Superior Court, Deborah S. Capeless, a clerk at the Berkshire Superior Court, Deborah Schilling, an assistant clerk at the Berkshire Superior Court, and Roger Albrecht, the benefits manager and ADA coordinator for the Massachusetts Administrative Office of the Trial Court. These affidavits, as materials outside the pleadings, may not properly be considered by this Court on the defendants' Rule 12(b)(6) motion. Heinrich v. Sweet, 44 F. Supp.2d 408, 412 (D. Mass. 1999). Although the defendants purport to submit the affidavits in support of their 12(b)(1) motion, the affidavits in question have no relevance to the defendants' jurisdictional arguments.

The defendants' motion to dismiss contends that by bringing the instant action, Morin is making an impermissible collateral attack on the state court tort action judgment. The defendants essentially claim that Morin is pre-empted from bringing his due process claims in this case because he could have raised such issues in his tort action. However, whether Morin actually raised these disability issues during the tort action or through an appeal of that action is irrelevant to determining whether this court has jurisdiction. The defendants' argument, although faulty, is that Morin's opportunity to raise the accessibility issues through his state court action precludes him from bringing this federal court action.

As a result, the content of the affidavits submitted by the defendants in support of their motion to dismiss are completely irrelevant to any thoughtful determination of the jurisdictional issues in this case. To make matters worse, the affidavits are exceedingly self-serving statements designed to comment on the merits of Morin's discrimination claims and the amount of his damages and are replete with hearsay.[2]

---

[2] The Affidavit of Daniel A. Ford contains hearsay in its description of the conversation between Ms. Capeless and Mr. Massery, and its observations relating to the merits of Morin's discrimination case and the measure of his damages are completely irrelevant to the issues at

14

As such, these affidavits are simply prejudicial and should be stricken from the record.

Collectively, the affidavits in question assert that Morin and his counsel in the tort action did not request any means to facilitate providing access to Morin during the trial. (Ford Affidavit, ¶ 6; Capeless Affidavit, ¶ 5; Schilling Affidavit, ¶ 3.) Such statements, suggesting that it was Morin's responsibility to request reasonable accommodations or program access, reflects a fundamental misunderstanding of the requirements of the ADA and the Rehabilitation Act. Where these statements have no bearing on the jurisdictional issue at hand, they are simply self-serving and prejudicial and should be stricken from the record.

Equally troublesome is the affidavit of Robert Albrecht, the benefits manager and the ADA coordinator for the Massachusetts Administrative Office of the Trial Court. Mr. Albrecht states vaguely in his affidavit that his office has "done much to help bring the Commonwealth's numerous old courthouses into compliance" with the ADA and to provide ADA training to court personnel. (Albrecht Affidavit, ¶ 2.) He also states that the Commonwealth's Division of Capital Asset Management announced that it will commence in the fall of 2005 a "long planned evaluation of all state courthouses" and that the Berkshire Superior Court will be one of the first courts to be evaluated. Id. "It is my understanding that the Administrative Office of the Trial Court and DCAM will then create and implement a plan to address ADA compliance issues throughout the Commonwealth's courthouses." Id.

It is unclear why the defendants have submitted Mr. Albrecht's affidavit, which only seems to establish that the Commonwealth has to date failed to comply with ADA

---

hand. With the exception of the Capeless-Massery conversation (which is also irrelevant to the jurisdictional issue), the content of the affidavits of Ms. Capeless, Ms. Schilling, and Mr.

evaluation requirements that should have been completed in 1992. Regardless, the affidavit is irrelevant to the jurisdictional issue in this case and should be stricken.

WHEREFORE, for all of the foregoing reasons, the plaintiff, Michael Morin, respectfully requests that this Honorable Court deny the defendants' motion to dismiss and grant his cross-motion to strike.

The Plaintiff, Michael Morin
By his attorneys,

**CLARK, HUNT & EMBRY**

*/s/ Michael B. Newman*
_____
William J. Hunt (244720)
Michael B. Newman (632222)
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920

---

Abrecht, variously commenting on their "understanding" of what Morin did or requested, or on the state of the ADA compliance at the courthouse, is entirely hearsay.